May it please the court. My name is Mark Meyer. I'm the CJA counsel from Great Falls, Montana, representing the appellant Jolaine Flammond on appeal. I represented Ms. Flammond at the district court level as well. Jolaine Flammond was initially indicted on three charges, drug-related offenses, conspiracy to possess methamphetamine with intent to distribute, distribution of methamphetamine, and possession with intent to distribute four grams or more of actual or pure methamphetamine. She pled guilty to account two, the possession with intent to distribute actual or pure methamphetamine, and as part of the sentencing process was assessed a two-level enhancement under section 2d 1.1 b1 given for the dangerous weapon was possessed in connection with the crime. Is that the most important issue that's in this case in your view? That in conjunction with the ineligibility for the safety valve, your honor, yes. And the enhancement was predicated upon Ms. Flammond's admitted gift of a pistol to a Julianne Lewis in December of 2010, January 2011 during the period of her charged criminal conduct as well as subsequently. She was It was three weapons. Yes, sir. And then subsequently a pistol and a rifle purchased. So she was, she was, she, she got a whole bunch of drugs and they advanced it and she paid them in part by giving them, not giving them, but paying them in weapons. Was it going to affect a barter? A barter, yes. Yes. One weapon was a gift because she liked her supplier so much. Excellent. I'm not sure that's the case, your honor, but the record's not clear as to, but in any event, yes, we certainly don't dispute that she did purchase those firearms and give those to Julianne Lewis. The, as part of the drug transaction. There's no question that this was the supplier that she gave them. No question, no. Julianne Lewis and Mr. Heavy Runner were were indicted in a subsequent indictment for criminal distribution of meth. A great name by the way. Heavy Runner. Yes. There's more than a few of them in the. Well, does the record show any other reason why she would be giving them weapons? No, your honor. And the, our position is certainly there's no nexus between the weapons and the drug offense committed. There's. Can I ask you this? I. My understanding is that it's well known, may have been in this trial as well, that people who sell drugs carry weapons. They want to protect themselves. They want to protect their supply. And the people here, if I recall the record correctly, already had some firearms for that very purpose. So here she is providing in a barter setting some guns because, as I understand it, at least one of the people, it might have been Heavy Runner or somebody else, couldn't buy a firearm because, at least in this unusual circumstance, because he or she was a felon, they couldn't get them. Or at least had, they were barred from getting guns. Isn't that right? Well, I believe so. In her change of plea hearing, Julianne testified that she bought the two firearms after Lewis told her she didn't have ID. She didn't indicate that she was told at that time that, you know, I'm a convicted felon, I can't buy them. But she couldn't buy. So she brought these guns, presumably not just out of the air, it was a request, you know, we'll pay us with this because this is what we use. So in effect, she is contributing to the conspiracy of selling drugs. You need guns. She brought the guns. If this was an isolated gift where there was no connection to anything else, I would get your point a lot better. But this is a fundamental part of this business, if you want to call it a business. And she brought these firearms to people who were clearly selling drugs, enabling them to use them to do whatever, kill people, rob people, protect their stash, whatever it is. What's wrong with that analysis? Well, at least in this case, there's nothing tying the guns she provided to Lewis or Heavy Runner, that they possessed them subsequently while they were dealing in drugs. Do they have to be? She paid for drugs. It was part of a deal. And just, we had Juliette Lewis was debriefed and subsequently, as I referenced in our brief, that she was possessing it, had a handgun, you know, even before she got these guns from Flamin. That one of the pistols Mr. Heavy Runner took and she didn't know what he did with, and that he sold one of the rifles to someone else. And conceivably, she could have, Lewis could have taken the firearms back to the state of Washington, wherever she was from, you know, left it in a glass case and come back to Montana with another firearm and engaged in the drug distribution. Ms. Flamin got a two-level enhancement for the firearm enhancement. It also made her eligible for the safety valve, which would have afforded her a two-level reduction. So essentially, her base offense level went up four levels. She was sentenced based upon- Is there anything else you have? I don't mean to cut you short, but, you know, you only have four minutes left and I don't want to, I don't want to sound like a Supreme Court justice either, but the one who said- You never will. The other day, you said in the middle of the healthcare argument, I don't think you're selling that point to Don Varelli, although I think he did pretty well. Don Varelli? Yeah. What's that got to do with it? I've also argued the unreasonableness of the sentence, like it's indicated before, Your Honor. Her sentence offense level essentially was increased four levels. Here we had, she was involved for this brief period of time in the drug distribution network. Prior to the close of the charged criminal conduct, she voluntarily went into the drug treatment program in Canada, came back knowing she was going to be indicted, had consistently been employed, had four young children, and as a result of the gun, like I said, of the gun enhancement, she received a sentence of 84 months. Without that two-level enhancement and eligible for the safety valve, she would have conceivably been eligible for a sentence in the neighborhood of 46 to 55 months. If we don't agree with you on the two-point enhancement for possession, and if we don't agree with you on the eligibility for the safety valve, is there still an argument that the sentence was nevertheless unreasonable? I believe so, just based on the facts that she presented, the fact that she went to drug treatment before she came back, before she was even indicted, before the period of the criminal charged conduct expired. You're saying it's substantively unreasonable? Is that your argument? Yes. And as well as the other argument we raised in our brief is the fact that she pled guilty to possession of actual or pure methamphetamine and the only evidence of the actual or pure methamphetamine was the 8.9 grams that were found when she was arrested in January of 2012. So the bottom line would be that she would get what, the mandatory minimum? Yes, she still, absent the safety valve, the lowest sentence she could get was 60 months. And this, even enhanced, this was within the guideline range, right? It was, Your Honor, yes. What was the high and the low of the guideline range? The high end was 87 months and she received 84 months. And the low? 70. 70 to 87, I think, was the guideline range. Thank you. I'll reserve the rest of my time. Thanks. Thank you. You might keep in mind the discussion that's already occurred when you make your argument. Yes, Your Honor. And may it please the Court, Leif Johnson for the United States. Your Honor, this was a mid-guideline sentence. We believe that it's clearly the totality support that sentence and there was no abuse of discretion. Our position on 2D1.1 is that it clearly applies. Even in the circumstance of possessing a weapon, that's all this Court has required. The period of the indictment was ongoing. 2D1.1 applies. You laid all this out in the brief, I think. And finally, the safety valve also applies as well because there was a connection to the offense. And with no further questions, Your Honor, I'll sit down. Thank you. Excellent presentation. Case disargued will be submitted. Next case for oral argument is Evergreen Safety Council v. RSA Network
judges: Schroeder, Reinhardt, Smith